**UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF MICHIGAN**
**SOUTHERN DIVISION**

---

MATTHEW D. GOODRICH,

    Plaintiff,

v.                                        Case No. 08-CV-13664

HOWARD V. TYREE,

    Defendant.
                                       /

**OPINION AND ORDER (1) OVERRULING PLAINTIFF'S OBJECTIONS, (2) ADOPTING THE MAGISTRATE JUDGE'S REPORT AND RECOMMENDATION, (3) GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT, (4) DENYING DEFENDANT'S MOTION TO STRIKE AS MOOT, (5) DENYING PLAINTIFF'S MOTION TO ORDER EXAM AND PROVIDE FUNDS, AND (6) DENYING PLAINTIFF'S MOTION FOR SUPPLEMENTAL DISCLOSURES**

This is a prisoner civil rights action under 42 U.S.C. § 1983. Pretrial matters were referred to Magistrate Judge Donald Scheer. On July 30, 2009, Magistrate Judge Scheer issued a Report and Recommendation ("R&R"), recommending that this court grant Defendant's motion for summary judgment, deny Defendant's motion to strike, deny Plaintiff's motion to order exam and provide funds, and deny Plaintiff's motion for supplemental disclosures. On August 13, 2009, Plaintiff filed objections. For the reasons stated below, the court will overrule Plaintiff's objections, adopt the magistrate judge's R&R, grant Defendant's motion for summary judgment, deny Defendant's motion to strike, deny Plaintiff's motion to order exam and provide funds, and deny Plaintiff's motion for supplemental disclosures.

## I.  BACKGROUND

Plaintiff Matthew Goodrich filed a complaint on August 25, 2008, asserting a violation of his right to be free from cruel and unusual punishment under the Eighth Amendment.  (Compl. ¶ 55.)  Plaintiff alleges Defendant Howard V. Tyree was "deliberately indifferent" to his "serious medical needs" while Plaintiff was incarcerated at the Saginaw Correctional Facility ("SCF") in Freeland, Michigan.  (*Id.*)  Defendant, a licensed physician assistant in the State of Michigan, was employed by Correctional Medical Services, Inc., and first treated Plaintiff at SCF on October 5, 2005.  (Def.'s Aff. ¶¶ 1-7, Def's Ex. A.)  Defendant continued to treat Plaintiff at SCF until May 14, 2007.  (Pl.'s Medical Records 10/7/05 - 5/14/07, Def.'s Ex. C.)  During this time, Plaintiff had a number of physical ailments, including an injured back, hypertension, an ulcer, and kidney stones.  (*Id.*)  Plaintiff was seen by multiple health care professionals and received numerous treatments and prescriptions, including Flexeril, Acetaminophen, Naproxen, Aspirin, Nitroglycerin, Atenolol, Zantac, Amitriptyline Hcl, Gabapentin, Fluoxetine Hcl, Enalapril Maleate, Isosorbide Mononitrate, Tramadol Hcl, Nexium, Prilosec, Ultram, and Tylenol #3.  (*Id.*)  Plaintiff's Ultram prescription, however, was discontinued after Plaintiff was caught concealing it under his lip and gums during an administration of the drug.  (Pl.'s Medical Records, 1/22/07, 2/2/07, Def.'s Ex. C.)

In the present case, Plaintiff points to a number of instances, discussed in detail below, that he alleges demonstrate a deliberate indifference to his serious medical needs.  Specifically, Plaintiff describes six "specific acts" that demonstrate this:  (1) Defendant "consciously disregarded a significant risk" when Defendant prescribed Plaintiff, who is a heart patient, naproxen, when naproxen increases the "the risk of

2

heart attack, stroke, and death." (Pl's Obj. at 1-2.)  (2) Defendant cancelled Plaintiff's Ultram prescription, which was the only medication that worked to relieve his pain.  (*Id.* at 2.)  (3) Defendant failed to order medication prescribed for his ulcer after returning from the emergency room.  (*Id.*)  (4) Defendant reduced the dosage of the pain medication that the hospital prescribed Plaintiff when he was diagnosed with kidney stones.  (*Id.* at 3.)  (5) Defendant only performed a cursory exam of Plaintiff when Plaintiff complained that his one leg was thirteen millimeters shorter than the other.  (*Id.*)  (6) Defendant repeatedly failed to provide "continuous and effective pain relieving medications or treatment."  (*Id.*)

## II.  STANDARD

### A. Summary Judgment Standard

Under Federal Rule of Civil Procedure 56, summary judgment is proper when there is no genuine issue as to any material fact and the moving party is entitled to judgment as a matter of law.  Fed. R. Civ. P. 56(c).  "In deciding a motion for summary judgment, the court must view the evidence in the light most favorable to the non-moving party, drawing all reasonable inferences in that party's favor."  *Sagan v. United States*, 342 F.3d 493, 497 (6th Cir. 2003).  "Where the moving party has carried its burden of showing that the pleadings, depositions, answers to interrogatories, admissions and affidavits in the record, construed favorably to the non-moving party, do not raise a genuine issue of material fact for trial, entry of summary judgment is appropriate."  *Gutierrez v. Lynch*, 826 F.2d 1534, 1536 (6th Cir. 1987) (citing *Celotex Corp. v. Catrett*, 477 U.S. 317 (1986)).

The court does not weigh the evidence to determine the truth of the matter, but rather, to determine if the evidence produced creates a genuine issue for trial. *Sagan*, 342 F.3d at 497 (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249 (1986)). The moving party must first show the absence of a genuine issue of material fact. *Plant v. Morton Int'l, Inc.*, 212 F.3d 929, 934 (6th Cir. 2000) (citing *Celotex*, 477 U.S. at 323). The burden then shifts to the nonmoving party, who "must do more than simply show that there is some metaphysical doubt as to the material facts." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986). He must put forth enough evidence to show that there exists a genuine issue to be decided at trial. *Plant*, 212 F.3d at 934 (citing *Anderson*, 477 U.S. at 256). Summary judgment is not appropriate when "the evidence presents a sufficient disagreement to require submission to a jury." *Anderson*, 477 U.S. at 251-52 (1986).

The existence of a factual dispute alone does not, however, defeat a properly supported motion for summary judgment – the disputed factual issue must be material. *See id.* at 252 ("The judge's inquiry, therefore, unavoidably asks whether reasonable jurors could find by a preponderance of the evidence that the plaintiff is entitled to a verdict – 'whether there is [evidence] upon which a jury can properly proceed to find a verdict for the party producing it, upon whom the *onus* of proof is imposed.'" (alteration in original) (citation omitted)). A fact is "material" for purposes of summary judgment when proof of that fact would establish or refute an essential element of the claim or a defense advanced by either party. *Kendall v. Hoover Co.*, 751 F.2d 171, 174 (6th Cir. 1984) (citation omitted).

4

**B. Timely Objections and *De Novo* Review**

The filing of timely objections requires the court to "make a *de novo* determination of those portions of the report or specified findings or recommendations to which objection is made." 28 U.S.C. § 636(b)(1); *see United States v. Raddatz*, 447 U.S. 667 (1980); *United States v. Walters*, 638 F.2d 947 (6th Cir. 1981). This *de novo* review, in turn, requires this court to re-examine all the relevant evidence previously reviewed by the magistrate to determine whether the recommendation should be accepted, rejected, or modified in whole or in part. 28 U.S.C. § 636(b)(1). The court may "receive further evidence" if desired. *Id.*

A party who files timely objections to a magistrate's report in order to preserve the right to appeal must be mindful of the purpose of such objections: to provide the district court "with the opportunity to consider the specific contentions of the parties and to correct any errors immediately." *Walters*, 638 F.2d at 949-50. The Supreme Court upheld this rule in *Thomas v. Arn,* 474 U.S. 140 (1985), a habeas corpus case. The Supreme Court noted that "[t]he filing of objections to a magistrate's report enables the district judge to focus attention on those issues – factual and legal – that are at the heart of the parties' dispute." *Id.* at 147 (footnote omitted).

Further, "[o]nly those specific objections to the magistrate's report made to the district court will be preserved for appellate review; making some objections but failing to raise others will not preserve all the objections a party may have." *Smith v. Detroit Fed'n of Teachers, Local 231*, 829 F.2d 1370, 1373 (6th Cir. 1987).

### III.  DISCUSSION

### A. Motion to Order Exam and Provide Funds and Motion for Supplemental Disclosures

Plaintiff failed to object to the magistrate judge's recommendation that Plaintiff's motion to order exam and provide funds and Plaintiff's motion for supplemental disclosures be denied.  Accordingly, these recommendations are not entitled to de novo review by this court.  *Smith*, 829 F.2d at 1373.  This court agrees with the magistrate judge's recommendations.  A "comprehensive physical exam" of Plaintiff is not necessary given his extensive treatment by numerous health care providers, including those at area hospitals.  Also, Defendant need not supplement his answer given the briefing and exhibits that Defendant has already provided.

### B. Eighth Amendment Claim

To plead an Eighth Amendment violation for lack of medical care, a plaintiff must show "deliberate indifference to [the] serious medical needs of prisoners [that] constitutes the 'unnecessary and wanton infliction of pain.'"  *Estelle v. Gamble*, 429 U.S. 97, 104 (1976) (quoting *Gregg v. Georgia*, 428 U.S. 153 (1976)).  An Eighth Amendment violation includes (1) an objective element of "serious medical need," and (2) a subjective element of "deliberate indifference" by the treating professional.  *See id.*

Under the objective element, "[a] serious medical need is 'one that has been diagnosed by a physician as mandating treatment or one that is so obvious that even a lay person would easily recognize the necessity for a doctor's attention.'"  *Harrison v. Ash*, 539 F.3d 510, 518 (6th Cir. 2008) (quoting *Blackmore v. Kalamazoo County*, 390 F.3d 890, 897 (6th Cir. 2004)); *see also Dodson v. Wilkinson*, No. 06-4136, 2008 WL

6

5378017, at *5 (6th Cir. Sept. 24, 2008) (finding that despite complaints of low blood sugar, stomach pains, asthma, ulcers, irritable bowel syndrome, allergies, and dizzy spells, plaintiff had not shown a "serious medical condition," even though these were symptoms of the Hepatitis C virus).

As the second, subjective component to prove an Eighth Amendment violation, a plaintiff must demonstrate "deliberate indifference" in addition to "serious medical need" in order to overcome a motion for summary judgment. *See Estelle*, 429 U.S. at 104. This subjective component requires Plaintiff to show that Defendant "possessed 'a sufficiently culpable state of mind in denying medical care' . . . . greater than mere negligence." *Miller v. Calhoun County*, 408 F.3d 803, 813 (6th Cir. 2005) (quoting *Blackmore*, 390 F.3d at 895). "Deliberate indifference" means at least "criminal recklessness, which requires a subjective showing that the defendant was aware of the risk of harm." *Sanderhofer v. Nichols*, 62 F.3d 151, 154 (6th Cir. 1995) (citing *Farmer v. Brennan*, 511 U.S. 825, 837 (1994)). Further, not "every malpractice claim involving a prisoner [is] automatically transformed into a cause of action under the civil right statutes." *Westlake v. Lucas*, 537 F.2d 857, 860 (6th Cir. 1976). Where "the dispute is over the adequacy of the treatment, federal courts are generally reluctant to second guess medical judgments and to constitutionalize claims which sound in state tort law." *Id.* at 860 n.5. When a defendant is a doctor, however, the fact-finder must "ask whether a reasonable doctor in his position could have concluded that a substantial risk of serious harm" to the prisoner existed. *Phillips v. Roane County, Tenn.*, 534 F.3d 531, 544 (6th Cir. 2008).

7

The evidence presented establishes that Plaintiff had sufficiently serious medical needs in satisfaction of the objective element. He had hypertension, back problems, a bleeding ulcer, and kidney stones. (Pl.'s Medical Records 10/7/05 - 5/14/07, Def.'s Ex. C.) However, as discussed below in Plaintiff's objections, he has failed to present evidence from which a reasonable juror could conclude that the subjective element was met because there is no evidence that Defendant acted with "criminal recklessness." *Sanderhofer,* 62 F.3d at 154 (citing *Farmer*, 511 U.S. at 837).

### 1. Plaintiff's Objections[1]

#### a. Objection One

Plaintiff first objects to the magistrate judge's characterization of Plaintiff's complaint. In setting forth the background of the case, the magistrate judge discussed Plaintiff's back injury and Plaintiff's claims regarding inadequate pain medication. (R&R at 1-2.) Plaintiff objects to this characterization and points to "seven separate specific acts" alleged in his complaint that demonstrate "deliberate indifference" to his "serious medical needs." (*Id.*) Plaintiff, however, fails to understand the purpose of this section of the order. The magistrate judge was merely providing background information regarding the case, not detailing all of Plaintiff's specific allegations. Although the magistrate judge perhaps could have provided more detail in laying out the background of the case, when the magistrate judge analyzed Plaintiff's allegations under the

---

[1]As an initial matter, the court finds that Plaintiff's objections are timely. The R&R was filed on July 30, 2009, and Plaintiff's objections were filed on August 13, 2009. Defendant argues that they were due on August 9, 2009, and therefore, Plaintiff filed the objections late. However, pursuant to Federal Rule of Civil Procedure 6, Plaintiff had until August 17, 2009, to timely file his objections. Therefore, Plaintiff's objections are timely.

appropriate legal standard, he properly considered all of Plaintiff's allegations. The magistrate judge cited to all of Plaintiff's medical records, referring to Plaintiff's "voluminous medical record." (R&R at 3.) The magistrate judge also referenced the chronological history of Plaintiff's medical treatment "for *various conditions* while he was incarcerated at SCF between 2005 and 2007." (*Id.*) (emphasis added). Based on all of this, the magistrate judge concluded that Plaintiff's "medical needs were addressed in a timely fashion" and that Plaintiff's "medical needs were not treated with deliberate indifference." (*Id.*) Accordingly, in the section of the order which addressed the legal claims raised by Plaintiff, all of Plaintiff's allegations were considered. Even though the magistrate judge's general analysis encompassed all of Plaintiff's claims, the court will address in more detail the "specific acts" alleged by Plaintiff.

The first "specific act" that Plaintiff alleges is that Defendant prescribed naproxen for Plaintiff's pain, even though Plaintiff was a "chronic care heart patient" taking blood pressure medication, and naproxen use by a heart patient greatly increases "risk of heart attack, stroke, and death." (Pl.'s Obj. at 2.) However, Plaintiff's complaint goes on to state that Defendant warned Plaintiff of this risk and that Plaintiff signed an "informed consent." (Compl. ¶ 20). Thus, Plaintiff's complaint on its face negates the subjective element required to prove an Eighth Amendment deliberate indifference claim. Defendant could not have "disregard[ed] an excessive risk to inmate health or safety" when he explicitly regarded the risk and informed the patient of it. *Farmer*, 511 U.S. at 837. In any event, decisions such as what type of medication to prescribe to a inmate are medical decisions, not subject to second-guessing by the federal courts. *See Estelle*, 429 U.S. at 107; *Westlake*, 537 F.2d at 860 n.5. If an inmate thinks he

9

should have received a different medication and that the doctor was negligent in prescribing the medication he received, his appropriate claim is one for medical malpractice, not a claim for violation of his constitutional rights. See *Estelle*, 429 U.S. at 107; *Westlake* 537 F.2d at 860 n.5.

The second "specific act" alleged by Plaintiff is that Defendant cancelled the only medication that worked to control his pain, leading to the overuse of another medication which caused an ulcer. (Pl's Obj. at 2.) Plaintiff does not allege that he was not given any medicine to relieve his pain, but instead that he was not given what he regarded as the only medicine that worked (Ultram). However, Plaintiff, who has a history of substance abuse, was caught concealing Ultram between his lower lip and gum when a nurse administered it to him on January 22, 2007. (Def.'s Aff. ¶ 27.) Moreover, a neurosurgeon had recently diagnosed Plaintiff with "mild arthritis" and recommended that "the only treatment should be a gentle exercise program." (Pl.'s Medical Records 2/7/2007.) Thus, Defendant has proferred a valid reason for why the medication that Plaintiff preferred was discontinued, and Plaintiff has failed to offer any evidence to the contrary. Neither was Plaintiff left to suffer without relief. See *Westlake*, 537 F.2d at 860 ("[P]risoner who is needlessly allowed to suffer pain when relief is available does have a cause of action . . . ."). He was given pain medicine, and any claim that the pain medicine given may have turned out to cause an ulcer sounds in tort law. See *id.* Again, medical judgments regarding which specific medications to prescribe are not ones for the federal courts. See *Estelle*, 429 U.S. at 107; *Westlake* 537 F.2d at 860 n.5. "[I]n light of the [Defendant's] current attitudes and conduct," Plaintiff has failed to prove that there is a genuine issue of material fact regarding whether Defendant acted with a

10

"sufficiently culpable state of mind in denying medical care." *Blackmore v. Kalamazoo County*, 390 F.3d 890, 895 (6th Cir. 2004).

The third "specific act" alleged by Plaintiff is that after being diagnosed with an ulcer at the hospital and receiving a prescription for Nexium, Defendant refused to order the prescription for eighteen days, leaving Plaintiff without the medication he needed to control the internal bleeding and putting him at "significant risk of going into shock and possible death." (Pl.'s Obj. at 2.) On February 20, 2007, Defendant returned from the hospital with a "GI bleed" diagnosis. (Pl's Medical Records, 2/19/07, Def.'s Ex. C.) Nurse Jim H. Sullivan's notes state that "day supply nexium ordered from area pharmacy." (*Id.*) The next day, Plaintiff met with Defendant. (Pl.'s Medical Records, 2/28/07, Def.'s Ex. C.) At this meeting, Plaintiff's medical records indicate that Defendant noted that Plaintiff "did bring home a temporary prescription for Nexium" and that he "[m]ay have to obtain RMO approval to stay on this." (*Id.*) On March 8, 2007, Defendant again met with Plaintiff. (Pl.'s Medical Records, 3/8/07, Def.'s Ex. C.) Defendant had learned the day before that Plaintiff only received a seven-day supply of Nexium, whereas his prescription called for forty days. (*Id.*) Thus, Plaintiff had been without his medicine. Defendant noted in the medical records that "[i]t was his understanding that he already had the prescription filled and [it] was in his possession." (*Id.*) Defendant apologized for his "misunderstanding" and ordered Plaintiff a 40-day supply of an equivalent medicine, Prilosec. (*Id.*) Thus, Plaintiff's medical records show that a mistake was indeed made regarding the filling of Plaintiff's Nexium prescription. However, Plaintiff has failed to present any evidence from which a jury could conclude that Defendant knew of and disregarded a serious risk of harm. *See Farmer*, 511 U.S.

11

at 837. There is no indication that Defendant "'subjectively perceived facts from which to infer substantial risk to the prisoner, that *he did in fact draw the inference*, and that he then disregarded that risk.'" *Phillips v. Roane County, Tenn.*, 534 F.3d 531, 540 (quoting *Comstock v. McCrary*, 273 F.3d 693, 703 (6th Cir. 2001)) (emphasis added). There simply is no evidence presented that Defendant was aware that Plaintiff was without his prescription. *See Miller v. Calhoun County*, 408 F.3d 803, 813 (6th Cir. 2005) ("'[A]n official's failure to alleviate a significant risk that he should have perceived but did not, while no cause for commendation, cannot be condemned as the infliction of punishment.'" (quoting *Farmer*, 511 U.S. at 838)).

The fourth "specific act" alleged by Plaintiff is that Defendant decreased the dosage of the Tylenol #3 with codeine that the emergency room had prescribed for him during the time he was supposed to pass a kidney stone. (Pl.'s Obj. at 3.) Plaintiff's dosage was reduced from two tablets every four to six hours to one tablet every eight hours. (Pl.'s Medical Records 3/15/07, Def.'s Ex. C.) A medical provider reducing the dosage of a narcotic painkiller for a patient that has a history of substance abuse does not strike the court as "sufficiently harmful to evidence deliberate indifference to serious medical needs." *Estelle*, 429 U.S. at 106. In addition, Nurse Debora Beeker's notes indicate another reason for the dosage reduction: "Tylenol #3 tabs every 4-6 hrs is too high of a dosage of Tylenol in a 24 hr period and can damage liver (Codeine is also very constipating.) MSP ordered Flexeril to be added with the T #3's to boost effectiveness." (Pl.'s Medical Records 3/15/07, Def.'s Ex. C.) Plaintiff is again asking this court to substitute its medical judgment for that of the attending medical care provider. This it cannot do. *See Estelle*, 429 U.S. at 107; Westlake 537 F.2d at 860 n.5.

The fifth "specific act" alleged by Plaintiff is that Plaintiff complained that he was thirteen millimeters shorter in his left leg which was causing pain in his left foot. (Pl.'s Obj. at 3.) Plaintiff alleges that Defendant only offered a "cursory exam and refused to refer Plaintiff to any exam by a specialist" resulting in "permanent damage to his left foot." (*Id.*) On November 23, 2005, Plaintiff's medical records reveal that Nurse Debora Beeker "conferred with PA. He spoke with orthopedic surgeon; can measure leg length here." (Pl.'s Medical Records 11/23/2005, Def.'s Ex. C.) On December 8, 2005, Plaintiff's musculoskeletal system was examined and found to be normal. (Pl.'s Medical Records 12/8/2005, Def.'s Ex. C.) The nurse's notes state, "He has seen nurse several times; has seen the PA and has seen DR for this issue. Able to bend at the waist and touch toes; has normal trunk rotation; Negative straight leg test. Lying supine legst to chest then lateral to hip without difficulty." (*Id.*) Thus, Plaintiff's concerns regarding his leg length were not consciously disregarded. To the extent that Plaintiff is alleging he received a negligent diagnosis, the Court has held that "a complaint that a physician has been negligent in diagnosing or treating a medical condition does not state a valid claim of medical mistreatment under the Eighth Amendment." *Estelle*, 429 U.S. at 106. Plaintiff has not presented any facts from which a jury could conclude that Defendant knew of and consciously disregarded a serious risk of harm involving Plaintiff's leg length. At most, Plaintiff has alleged negligence, which does not rise to the level of a constitutional violation. *See id.* ("Medical malpractice does not become a constitutional violation merely because the victim is a prisoner.").

The final "specific act" alleged by Plaintiff is that Defendant repeatedly failed to "provide continuous and effective pain relieving medications or treatment." (Pl.'s Obj. at

13

4.) This argument has already been addressed under Plaintiff's "specific acts" one, two, and four. Again, Plaintiff, who has a history of substance abuse, was provided with extensive pain relief medication on multiple occasions, including Flexiril, Motrin, Lodine, Acetaminophen, Naproxen, Aspirin, Ultram, Prednisone, Elavil, Tylenol #3 with codeine, and others (Pl.'s Medical Records 10/20/2005, 1/12/2006, 9/28/2006, 3/12/2007, Def.'s Ex. C.) "Where a prisoner has received some medical attention and the dispute is over the adequacy of treatment, federal courts are generally reluctant to second guess medical judgments . . . ." Westlake, 537 F.2d at 860 n.5. Plaintiff has not only received "some medical attention," but has received extensive medication attention. This court will not second guess the medications that a trained health professional prescribes.

### b. Objection Two[2]

Plaintiff's second objection takes issue with the magistrate judge's statement that "inadequate medical care will only be shown by a 'knowing failure or refusal to provide urgently needed medical care which causes residual injury that could have been prevented with timely attention.'" (Pl.'s Obj. at 4.) Plaintiff goes on to list the instances that he alleges demonstrate this, including: (A) failure to diagnose his leg length discrepancy (discussed above under specific act five), (B) failure to prescribe proper pain medication led to ulcer and heart damage (discussed above under specific act one), (C) failure to order ulcer medication (discussed above under specific act three), and (D) failure to prescribe the full pain medication dosage prescribed by the ER

---

[2]In this and other objections, Plaintiff cites to numerous exhibits. Plaintiff, however, has failed to provide these exhibits to the court. While the court has exhibits #78-98 in the docket, it has not been provided others.

(discussed above under specific act four). (*Id.*) These instances have been fully discussed under Defendant's first objection, and the court will not repeat its analysis here. However, the court will note that in each of these incidents, there was not a "failure or refusal to provide urgently needed medical care," but instead in each instance care was provided: (A) Plaintiff's leg was examined, (B) he was given pain medication which took into account his substance abuse history and was warned of the risk associated with naproxen use, (C) he had Nexium when he arrived back from the ER and was subsequently ordered Prilosec when it was determined that he had run out of Nexium, and (D) he was prescribed one tablet of Tylenol #3 with codeine every eight hours. Plaintiff was not refused medical attention, but instead he disagreed with the medical attention that he received. Patient disagreement does not establish a deliberate indifference claim under the Eight Amendment.

### c. Objection Three

In part (A) of Plaintiff's third objection, Plaintiff takes issue with the magistrate judge referring to Plaintiff's "voluminous medical records" and then citing to Defendant's exhibits. (Pl.'s Obj. at 5.) Plaintiff points out that Defendant's exhibits contains medical records after May 14, 2007, when Plaintiff left SCF. However, Plaintiff's medical records during the time he was seeing Defendant at SCF (10/7/05 - 5/14/07) are indeed voluminous. They include numerous visits and span over ninety pages.

In part (B) of Plaintiff's third objection, Plaintiff alleges that the magistrate judge has improperly weighed the evidence at the summary judgment stage. (Pl.'s Obj. at 5.) The R&R does not show that the Magistrate Judge improperly weighed the evidence. Instead, the R&R merely states what the evidence shows, that Plaintiff was provided

15

with "extensive medical treatment" for "various conditions." (R&R at 3.) Plaintiff provided no evidence in response to this showing. Thus, a jury could not find "the requisite deliberate indifference" was present. (*Id.*)

### d. Objection Four

Plaintiff objects to the magistrate judge's statement that Plaintiff was "evaluated by numerous specialists," when Plaintiff alleges that he only saw one specialist, a neurosurgeon. It is unclear whether Plaintiff was also seen by specialists during his other visits to the hospital for GI bleed and kidney stones. Regardless, only "material" facts matter for purposes of summary judgment. *Kendall*, 751 F.2d at 174. Given the extensive medical treatment that Plaintiff received as evidenced by his medical records, including multiple visits with doctors, physician assistants, nurses, and to the emergency room, the precise number of specialists that Plaintiff saw is immaterial.

### e. Objection Five

Plaintiff objects to the magistrate judge's statement that "Defendant was not deliberately or wantonly indifferent to plaintiff['s] serious medical needs" and that "[t]he P.A. did not knowingly refuse to provide urgently needed medical care, and his conduct did not lead to residular injuries which could have been prevented with timely attention." (Pl.'s Obj. at 6.) Plaintiff claims that he produced evidence to rebut this conclusion and that the magistrate judge weighed the evidence. Plaintiff, however, did not produce evidence to rebut this conclusion. The medical records indicate substantial treatment by Defendant during Plaintiff's incarceration at SCF, including numerous examinations, multiple prescriptions for a variety of conditions, exercise instructions, and a pelvic release. (Pl.'s Medical Records 10/7/05 - 5/14/07, Def.'s Ex. C.) Based on these

medical records, no reasonable inference can be drawn that Defendant acted with a culpability amounting to "criminal recklessness." *Sanderhofer*, 62 F.3d at 154 (citing *Farmer*, 511 U.S. at 837.)

### f. Objection Six

Plaintiff next objects to the magistrate judge's statement regarding a "substantial record of medical treatment" and characterization of Plaintiff's complaint about treatment as a "difference of opinion between a prisoner and prison doctors." (Pl.'s Obj. at 6.) Specifically, Plaintiff alleges that this is not about a difference of opinion and that his medical records show "delays in medical treatment averaging 15 days, the repeated ordering of contra-indicated meds, delays in receiving prescriptions, summarily canceling medical details, and preventable hospitalizations." (Pl.'s Obj. at 6.) The allegations involving contraindicated medications, prescriptions, and cancelling medical details have been discussed at length above regarding Plaintiff's other objections. Regarding delay, Plaintiff has not submitted any verifying medical evidence establishing any "detrimental effect of the delay in medical treatment." *Dodson*, 304 F. App'x at 439. Nor can Plaintiff establish that his hospitalizations were preventable, and even if they were, that it was Defendant who failed to prevent them. Medicine is not an exact science. Medical care providers must make decisions based on a given patient's individual circumstances, history, and symptoms. Defendant did just that in this case, and the court will not second guess these medical decisions. *See Estelle*, 429 U.S. at 107.

### g. Unnumbered Objection

The R&R specifically stated the proper form for objections and that they "must be labeled as 'Objection #1,' 'Objection #2,' etc." (R&R at 4.) Plaintiff appears to allege a final unnumbered catchall objection. Because it was not denominated as such as required by the R&R, the court need not consider it. However, the court will note that it has fully addressed Plaintiff's final objection in the above discussions. Plaintiff is again alleging issues with his treatment and the prescriptions he received. And again, the federal courts are not in a position to second-guess the medical judgments of health care professionals. *Westlake*, 537 F.2d at 860 n.5. The evidence does not demonstrate that "the medical attention rendered [was] so woefully inadequate as to amount to no treatment at all." *Id.* To the contrary, Plaintiff's medical record reveals substantial treatment for a variety of conditions. (Pl.'s Medical Records 10/7/05 - 5/14/07, Def.'s Ex. C.)

Plaintiff also alleges that Defendant has "repeatedly resisted" Plaintiff's "discovery requests and has provided false and misleading statements or evidence which unfairly prejudiced" Plaintiff's case. (Pl.'s Obj. at 7.) First, this is not an objection to the magistrate judge's R&R. Second, Plaintiff has provided no evidence or supporting factual allegations, and the court will not credit this conclusory allegation.

### 2. Summary Judgment

As discussed above, Plaintiff's medical records show that he was provided with adequate treatment of his medical issues while confined at SCF and under the care of Defendant and others. Indeed, Plaintiff's own exhibit outlines an extensive treatment history, including sixteen visits with medical service providers and receiving numerous prescriptions. (Pl.'s Ex. 97.) Plaintiff cannot point to any genuine issue of material fact

and has not provided any evidence from which a reasonable juror could find that the subjective element of an Eighth Amendment deliberate indifference claim has been met. *See Farmer*, 511 U.S. at 837. Accordingly, the court will grant Defendant's motion for summary judgment.

### IV.  CONCLUSION

For the reasons stated above, IT IS ORDERED that Plaintiff's objections to the magistrate judge's report and recommendation [Dkt. # 53] are OVERRULED. The magistrate judge's "Report and Recommendation" [Dkt. # 52] is ADOPTED in full and incorporated by reference.

IT IS FURTHER ORDERED that Defendant's motion for summary judgment [Dkt. # 41] is GRANTED.

IT IS ALSO ORDERED that Defendant's motion to strike [Dkt. # 51] is DENIED as moot.

Finally, IT IS ORDERED that Plaintiff's motion to order exam and provide funds [Dkt. # 29] and motion for supplemental disclosures [Dkt. # 39] are DENIED.

    S/Robert H. Cleland
    ROBERT H. CLELAND
    UNITED STATES DISTRICT JUDGE

Dated:  August 31, 2009

I hereby certify that a copy of the foregoing document was mailed to counsel of record on this date, August 31, 2009, by electronic and/or ordinary mail.

    S/Lisa Wagner
    Case Manager and Deputy Clerk
    (313) 234-5522